**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **MICHAEL JACKSON POWELL**, 324996 | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. **RWT-05-170** |
| **EUGENE M. NUTH,** *et al.,* | * | |
| Defendants | * | |

*****

**MEMORANDUM OPINION**

Plaintiff seeks to "reopen the stay" imposed on a civil rights action filed nearly thirty years ago. On June 19, 1978, Plaintiff filed a 42 U.S.C. § 1983 civil rights action against prison and medical staff at the Baltimore County Jail ("BCJ"), and St. Joseph's Hospital ("St. Joseph's"). Plaintiff alleged that from June 21, 1977, until his transfer back to a state prison in Pennsylvania, he was denied medical care for back and neck injuries sustained when he slipped and slid down a stairwell at BCJ. Powell v. Nuth, et al., Civil Action No. M-78-1095 at Paper No. 1. Plaintiff also claimed that the conditions at BCJ were inhumane and violated his Fourteenth Amendment rights as a pre-trial detainee. Id. In subsequent pleadings, Plaintiff filed multiple supplemental constitutional claims against Defendant Nuth and personnel at the State Correctional Institutions in Huntingdon and Pittsburgh, Pennsylvania. See Powell v. Nuth, et al., Civil Action No. M-78-1095, Paper Nos. 5, 7. Plaintiff subsequently sought leave to amend his complaint to invoke this Court's

federal question and diversity jurisdiction and to add additional parties.[1]  Id. at Paper Nos. 11, 16, 22.

On June 11, 1980, the Honorable Shirley B. Jones issues an Order staying all proceedings pending Plaintiff's return to federal custody.[2]  See Powell v. Nuth, et al., Civil Action No. M-78-1095 at Paper No. 45.  Judge Jones noted that there were no federal funds available to transport a non-federal prisoner claimant from out of state for a civil case.  She also noted that the Court did not have jurisdiction to order Maryland or Baltimore County officials to transport Plaintiff from a Pennsylvania facility.  Id.  Plaintiff was directed to inform the court within 30 days of his return to federal custody if he desired to pursue this litigation.  Id.

The case was subsequently reassigned to the Honorable James R. Miller Jr.  On June 13, 1983, Judge Miller administratively closed the case.  The administrative closure was made subject to Plaintiff's right to reopen the case at such time as he was again present in this judicial district.  Id. at Paper No. 62.

On April 3, 1984, Plaintiff notified this court that he had been returned to federal custody.  See Powell v. Nuth, et al., Civil Action No. M-78-1095 at Paper No. 66.  He later sought clarification of Judge Jones's June, 1980 Order.  On November 7, 1984, Judge Miller wrote Plaintiff, informing him that the case will remain closed "until you are in a position to be present in this judicial district."  Id. at Paper No. 69.

---

[1]  Plaintiff also filed a Motion for Extension of Time, a Motion for Preliminary Hearing, a Motion to Strike Defendants' dispositive pleadings, and a Motion to Compel Discovery.  See  Powell v. Nuth, et al., Civil Action No. M-78-1095 at Paper Nos. 17, 35, 38 & 55.  Defendants filed a Motion for Protective Order and a Motion to Strike Plaintiff's Motion for Preliminary Hearing.  Id. at Paper Nos. 18 & 36.  According to the record, none of these Motions were ruled on by this Court.

[2]  Judge Jones additionally held that Plaintiff's release from BCJ mooted all claims with the exception of his damage claims.  See Powell v. Nuth, et al., Civil Action No. M-78-1095 at Paper No. 45.

On January 4, 2005, Plaintiff was transferred to the Maryland Division of Correction. He subsequently filed to reopen Powell v. Nuth, et al., Civil Action No. M-78-1095.

As previously noted, the underlying cause of action arose nearly thirty years ago. The case was closed for over twenty-one years. During the interim period, no routine status reports were ordered relating to the record-keeping practices, the employment status, or the whereabouts of Defendants. This has created an administrative nightmare.

In his status report, the Assistant County Attorney indicated that: (i) the County is no longer in possession of any records that pertain to Plaintiff's 1977 BCJ confinement[3], (ii) the County is no longer in possession of any personnel records or files pertaining to Defendants; (iii) only three of the Defendants are still employed by Baltimore County, while other Defendants have resigned, retired, passed away, or have otherwise been terminated from employment; and (iv) a number of Defendants are not specifically identified. (Paper No. 7).

Other administrative problems exist. When the Court re-examined the docket and pleadings filed in Powell v. Nuth, et al., Civil Action No. M-78-1095, along with the docket in this case, it found it appropriate for the case to go forward. However, it noted that because of the numerous amended pleadings, it was not clear which Defendants were to be served with process and what precise factual allegations were currently before the court.[4] (Paper Nos. 14 & 15). Therefore, the Court ordered Plaintiff to file an amended complaint elucidating (i) the properly named party defendants; (ii) the jurisdictional basis for the complaint; (iii) a clear and concise factual statement of his claims, and (iii) what relief Plaintiff was seeking from the Court. (Id.) Plaintiff was provided

---

[3] The County Attorney did provide approximately 17 pages of medical records taken from Plaintiff's 1977 confinement. Paper No. 7.

[4] The Court observes that between 1978 and 1980, the Court failed to issue any rulings on Plaintiff's obvious attempts to amend his original allegations.

with a copy of the docket of Powell v. Nuth, et al., Civil Action No. M-78-1095, as well as the original complaint and all pleadings containing amended allegations.[5]

Plaintiff filed an amended complaint invoking this Court's federal question and diversity jurisdiction. (Paper No. 17). The twenty-nine page amended complaint names Eugene M. Nuth, Captain John R. Allison, Wayne Harbin,[6] Russell M. Hudson, Donald R. Williams, Howard C. Heiss, III, Andrew Bartenfelder, County Jail Nurse, Doctor Charles F. O'Donnell, Charles W. Knott, III, Vernon A. Hoey, Mr. Ford, and an unidentified "John Doe" Baltimore County Police Officer as Defendants. Plaintiff seeks declaratory judgment, compensatory damages, punitive damages, and costs. Affording the *pro se* pleading a generous construction, the Court finds the following allegations are raised:

(1) While confined for pre-trial detention at the BCJ[7] on June 21, 1977, Plaintiff slipped in a puddle on some stairs, fell on his back, and was severely injured.

(2) Plaintiff was put on a stretcher and taken in a private ambulance to St. Joseph's. At St. Joseph's he was x-rayed, prescribed a muscle relaxer, and ordered placed in the BCJ infirmary. However, the hospital ambulance crew refused to transport Plaintiff back to BCJ. So, Defendants Knott, Hoey, Ford and John Doe decided to transport Plaintiff in the rear of the police van by regular hand-held stretcher.

(3) Plaintiff was placed on a stretcher, handcuffed, and put in the police van. During the ride the stretcher was "jolted" and he was subjected to racist comments. No steps were taken to secure the stretcher in the van, and Plaintiff was made to endure a deliberately "reckless" drive back to BCJ. This reckless driving caused his stretcher to shift and slide, thus exacerbating his injuries.

(4) Despite hospital orders that he be placed in the BCJ infirmary, Plaintiff was placed in a BCJ disciplinary housing unit cell, was not given the muscle relaxer prescribed

---

[5] See Powell v. Nuth, et al., Civil Action No. M-78-1095, Paper Nos. 1, 5, 7, 11, 16, 22, 24, 28, & 31.

[6] Wayne Harbin is not listed in the caption of the Amended Complaint. However, he is named in the body of the pleading.

[7] Plaintiff claims that he was transported to Maryland in 1976, pursuant to an Interstate Compact Agreement between Maryland and Pennsylvania, in order to dispose of criminal charges pending in Baltimore County, Maryland. (Paper No. 17 at 5 & 25).

4

        by the hospital, and was not provided any medical care. Due to his inability to move, he was forced to urinate on himself and could not eat the tray meals slid under his cell door.[8]

(5) On June 22, 1977, when a BCJ nurse came to give Plaintiff his dose of muscle relaxant, she noted Plaintiff's condition and Plaintiff was transported back to St. Joseph's. At St. Joseph's, Plaintiff received tests not performed on the preceding date, was evaluated by an orthopedist, and was given an injection of pain medication. Plaintiff remained at St. Joseph's most of that day. He was then transported back to BCJ.

(6) Upon his return to BCJ, Plaintiff was placed back in the same disciplinary housing unit cell. He alleges that his placement in disciplinary housing violated his liberty interests because he could not enjoy the privileges he had while in general population.

(7) On June 23, 1977, an administrative remedy was filed with Defendant Nuth regarding Plaintiff's placement and treatment in the BCJ disciplinary housing unit. Plaintiff formally sought the assistance of Defendant Dr. Charles O'Donnell, the BCJ consulting physician, with regard to pain and muscle relaxant medication, his continuing symptoms of pain, his inability to bend, and his wish to be assigned to the BCJ infirmary.

(8) On July 1, 1977, Plaintiff was escorted out of his cell by Defendant Hudson. Hudson refused to assist Plaintiff despite his known mobility limitations. Plaintiff was taken to an office where he was examined by Defendant O'Donnell. O'Donnell ordered Plaintiff to be placed in the BCJ infirmary and directed that he receive hot shower treatments and observation. Defendants Hudson and BCJ Nurse interceded in the matter. They convinced O'Donnell that assignment to the infirmary was not necessary. Plaintiff was placed back in the same disciplinary segregation cell. Although he did receive a medication change, he did not receive shower treatments or assistance with receiving his meals. This was the last medical examination Plaintiff received from Defendant O'Donnell or anyone at BCJ.

(9) On July 7, 1977, Plaintiff's medication ran out. He filed a request for additional medication. However, he received no response regarding his request. That same day he filed a request to be allowed to go to that evening's church services. However, he was informed that because he was not permitted to travel stairs, he was to remain in his cell.

---

      [8] Plaintiff claims that during the ensuing three weeks in the disciplinary segregation cell Defendants Nuth, Allison, Harbin, Hudson, Williams, Heiss, and Bartenfelder refused to provide him assistance in receiving his meals, despite being aware that he could not reach them due to his physical limitations. (Paper No. 17 at 18). He alleges that these Defendants, with the exception of Nuth, interfered with and refused to provide Plaintiff's ordered hot shower therapy treatments. (Id.)

(10) On July 12, 1977, Plaintiff was transported back to the orthopedic clinic at St. Joseph's. On that day, for the first time, x-rays were taken of Plaintiff's neck. He was diagnosed with "acute lumbar strain" and "pain unusual region" and prescribed a heating pad for his back, Darvocet, spinal x-rays, and a board to support his mattress. On July 13, 1977, approximately three weeks after his original injury, Plaintiff was moved to the BCJ infirmary.

(11) On July 15, 1977, the Darvocet treatment was curtailed by the BCJ medical department. On July 16, 1977, after only two days in the infirmary, Defendants Heiss and Allison informed Plaintiff that he was being removed from the infirmary despite his injuries. They then forced Plaintiff to carry his belongings up three flights of stairs to BCJ C-Tier housing.

(12) The conditions of confinement on BCJ C-Tier were unconstitutional due to overcrowding, violence, and inadequate staffing.

(13) On July 21, 1977, the date that he was due back at the orthopedic clinic at St. Joseph's, Plaintiff was transferred from BCJ to a Pennsylvania state prison without medications, notice, or reports related to Plaintiff's medical condition.

(14) After his arrival in Pennsylvania, Plaintiff was examined, diagnosed with a chronic lower back sprain, and received treatment and medication consistent with that ordered at St. Joseph's on July 12, 1977.

(15) As a direct result of Defendants' actions (or inactions) Plaintiff was made to experience severe pain and discomfort during the one-month period in question; prolonged periods of pain and emotional distress (depression and insomnia) after his return to the Pennsylvania Department of Corrections; and the loss of educational opportunities.

(Paper No. 17).

In light of Plaintiff's amended filing, the court docket shall be amended to reflect the named Defendants. The Office of Law for Baltimore County shall be directed to accept/refuse service on

Defendants and to file an answer to the Amended Complaint.[9]  A separate Order shall be entered reflecting this opinion.

Date:  11/7/07                                              /s/
                                        ROGER W. TITUS
                               UNITED STATES DISTRICT JUDGE

---

[9] The Court makes the following observations.  In its Status Report the Baltimore County Office of Law indicated that: (1) Defendants Harbin, Knott, and Hoey remain employed by Baltimore County; (2) Defendants Nuth, Allison, Williams, Heiss, and O'Donnell resigned, retired, and/or were administratively terminated from employment during the period between 1977 and 1992; (3) Defendant Bartenfelder is deceased; (4) no employee information could be found as to Defendant Hudson;  and (5) the identities of "County Jail Nurse," "Mr. Ford," and "John Doe Unidentified County Police Officer" could not be determined. (Paper No. 7).  Consequently, if the Office of Law will not accept service for identified Defendants, it shall provide their last know work or home address to the Court.  The Office of Law shall also provide verification of Defendant Bartenfelder's death.  All information regarding Defendants' home addresses shall be placed under seal.